UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LYNNETTE GRAY,

       Plaintiff,                                      Case No. 1:08-cv-631

v.                                                   HON. JANET T. NEFF

CRAIG R. BUSH et al.,

       Defendants.
_____/

## OPINION

Pending before the Court is the Motion for Abstention filed by defendant Midwest Memorial Group ("Midwest") (Dkt 85). Plaintiff filed a response (Dkt 88),[1] and Midwest filed a reply (Dkt 89). Having reviewed the written submissions and accompanying exhibits, the Court finds that the relevant facts and arguments are adequately presented in these materials and that oral argument would not aid the decisional process. *See* W.D. Mich. LCivR 7.2(d). For the reasons that follow, the Court determines that *Burford* abstention is indicated on the facts at bar and grants the motion.

I

A. *Factual Background*

In Michigan, cemetery regulation is governed by the Cemetery Regulation Act, MICH. COMP. LAWS § 456.521 *et seq.* The Act regulates the creation and management of cemeteries, provides for a cemetery commissioner and prescribes his or her powers and duties, requires the registration and

---

[1] Defendant Craig Bush also filed a "response" to Midwest's motion (Dkt 87). Defendant Bush does not take issue with the relief Midwest requests, only some of Midwest's factual statements.

audit of cemeteries, provides for long-term care of certain cemeteries, regulates persons selling burial and related rights and cemetery services and merchandise, and prescribes remedies and penalties. In pertinent part, the cemetery commissioner is charged with implementing and administering requirements for trust agreements and trust accounts. MICH. COMP. LAWS § 456.528(e).

Michigan's Prepaid Funeral and Cemetery Sales Act, MICH. COMP. LAWS § 328.211 *et seq.,* in turn, governs the sale of prepaid funeral services (those services customarily performed by a mortuary science licensee) and cemetery merchandise (cemetery burial vaults or other outside containers, grave memorials, urns, and other items sold or leased for use in connection with a funeral or an alternative to a funeral). In pertinent part, this Act requires: (1) that "all funds received in connection with a prepaid contract shall be held in escrow by an escrow agent for the benefit of the contract beneficiary," or (2) that "funds received by a cemetery registered under the cemetery regulation act, 1968 PA 251, MCL 456.521 to 456.543, for cemetery merchandise may, in lieu of subsection (1), be escrowed." MICH. COMP. LAWS § 328.222(1) & (2).

Michigan regulators investigating the records and conduct of Cemetery Regulation Act registrants discovered that certain trust monies that had been set aside to care for cemeteries and burials were instead being used to fund the purchases of cemeteries and for other improper purposes. The investigations gave rise to four civil cases filed in the Circuit Court for Ingham County, Michigan.[2] The state court cases are not only related to one another but also give context to the case plaintiff seeks to maintain at bar.

---

[2] Clayton Smart, Robert Nelms, and others who facilitated the cemetery trust fund transfers have also been criminally charged in Michigan and other states in connection with the alleged trust fund raiding.

First, in December 2006, Andrew Metcalf, who was then performing the responsibilities of the cemetery commissioner for Michigan, filed *Metcalf v. Albion Memory Gardens, et al.,* No. 06-1608-cr ("the *Albion* litigation") (Verified Compl. Exh. C). In the *Albion* litigation, Metcalf sought relief for violations committed in the August 2004 sale of cemeteries from Craig Bush, a Michigan attorney, to Clayton Smart, an Oklahoma resident, specifically, the alleged conversion of over $60 million in trust funds. Metcalf also sought the appointment of a conservator to take control of Albion Memory Gardens and the other named cemeteries and funeral homes, and the Ingham Circuit Court appointed Mark Zausmer, a Michigan attorney, as conservator.

Conservator Zausmer, in turn, filed the second complaint in Ingham Circuit Court in January 2007: *Zausmer v. Bush,* No. 07-102-cz ("the *Bush* litigation"). Against Bush, Zausmer alleged common law conversion, statutory conversion, breach of fiduciary duties, unjust enrichment, and constructive trust. The Ingham Circuit Court issued a Temporary Restraining Order freezing Bush's Smith Barney account and issued subsequent orders continuing the TRO (Verified Compl. Exhs. J-M).

Meanwhile, the Ingham Circuit Court issued an order in the *Albion* litigation approving an Exclusive Succession Planning Agreement between conservator Zausmer and American Cemetery/Mortuary Consultants, Inc. The Ingham Circuit Court held numerous hearings and entered orders modifying the conservatorship, permitting the conservator to enter into transactions pledging certain cemetery assets, establishing bid procedures and other deadlines, approving the sale of certain real estate, and managing the claims and liens of creditors, employees, unions, and suppliers, such as "flower endowment contractors." On September 28, 2007, the Ingham Circuit Court held a lengthy hearing at which the submitted bids for purchasing the cemeteries and their

assets were discussed. The consultant assisting conservator Zausmer testified that the bid from Midwest was the bid it recommended accepting due to Midwest's superior financing arrangement (9/28/2007 Hrg. [Midwest Mot. Exh. 8] 59-60).

In December 2007, cemetery commissioner Metcalf filed a third complaint in Ingham Circuit Court: *Metcalf v. Chapel Hill Mem'l Gardens, Robert Nelms, and Chapel Hill Assocs., Inc.,* No. 07-1856-cr ("the *Chapel Hill* litigation") (Verified Compl.Exhs. D & E). Metcalf sought injunctive relief and the appointment of a conservator over an additional Michigan cemetery, Chapel Hill Memorial Gardens in Grand Rapids, Michigan. Robert Nelms, an Indiana investor, owned Chapel Hill, and the basis for the Chapel Hill conservatorship was the disappearance of approximately $4.2 million in Chapel Hill trust funds. Zausmer was also appointed conservator of Chapel Hill (Verified Compl. Exh. F).

Nelms was acquainted with attorney Bush. In December 2004, Bush facilitated Nelms' purchase of Chapel Hill from Fred Meyer, Jr. and other members of the Meyer family by providing Nelms with a $13.5 million loan from Bush's personal account at Smith Barney to cover the down payment (Verified Compl. ¶¶ 20, 21; Bush Mot. [Dkt 91] 2). Nelms created "Ansure Mortuaries of Indiana LLC" as a holding company for the purchase (Verified Compl. ¶ 33). According to Michigan regulators, the funds Bush loaned to Nelms/Ansure were trust funds from Michigan cemeteries (Midwest Mot. 11, Exh. 17). The package of properties, which the Meyer family sold to Nelms/Ansure for approximately $27 million, included not only Chapel Hill but also other cemeteries and funeral homes in Indiana (*id.* ¶ 17). Once the sale was complete, Nelms repaid Bush the loan amount plus interest of $246,663.45 (*id.* ¶ 27).

4

Zausmer filed suit against Nelms in December 2007, which is the fourth related complaint in Ingham Circuit Court: *Zausmer v. Nelms,* No. 07-1864-cr ("the *Nelms* litigation") (Verified Compl. Exh. H). Against Nelms, Zausmer alleged common law conversion, statutory conversion, breach of fiduciary duties, unjust enrichment, constructive trust, and negligence.

On January 3, 2008, the Meyer family filed in the Circuit Court for Johnson County, Indiana a Complaint on Notes and to Foreclose Mortgages: *Fred Meyer, Jr. et al. v. Ansure Mortuaries of Indiana, LLC, et al.,* 41C01-0801-MF-00001 ("the *Meyer* litigation") (Verified Compl. Exh. A). On January 17, 2008, the state of Indiana (its attorney general and securities commissioner) moved to intervene and for appointment of a receiver over the mortgagor companies. *Indiana ex rel. Chris Naylor v. Robert E. Nelms et al.,* 41D03-0801-MF-00005 (Midwest Mot. Exh. 18). The Johnson Circuit Court appointed Lynnette Gray, an Indiana resident, as temporary receiver for Ansure and the other businesses Nelms acquired from the Meyers, including Chapel Hill (Verified Compl. ¶¶ 1, 33).

On February 7, 2008, after more than a year of managing the *Albion* litigation, the Ingham Circuit Court entered an Order Authorizing Conservator to Enter into Asset Purchase Agreement with Midwest Memorial Group (Verified Compl. Exh. N). On February 14, 2008, plaintiff Gray met with Zausmer and Midwest in Indianapolis and advised them of her allegation that Nelms used assets that were held by the cemeteries in Indiana trust funds to repay Bush's loan (*id.* ¶ 54). Like the Michigan Legislature, the Indiana Legislature has also enacted an act governing cemetery regulation, an act that requires the creation and maintenance of separate escrow or trust accounts for certain funds. See, e.g., IND. CODE § 23-14-49-1 (Cemetery Escrow or Trust Accounts). Gray

5

concedes that she did not seek her own restraining order over the Smith Barney account in the *Bush* litigation (Pl. Resp. 9).

On April 30, 2008, the Ingham Circuit Court entered orders quieting title to Chapel Hill, denying objections to conservator Zausmer's claim determinations, and approving a stipulation for settlement of certain state tax claims. On May 2, 2008, the Ingham Circuit Court entered an Order Approving Closing Agreement and Authorizing Conservator to Enter into Transactions Pledging Certain Assets of the Cemeteries (Verified Compl. Exh. O). Attached to the May 2, 2008 order is an undated "Closing Agreement" through which Midwest agreed to purchase the cemeteries Bush owned (*id.*). Indiana receiver Gray's appointment was made permanent on May 2, 2008 (*id.* ¶ 34). Midwest represents that the closing subsequently occurred on May 27, 2008 (Midwest Mot. 8, Exh. 12).

On June 30, 2008, Midwest filed in the *Bush* litigation an emergency petition for approval of a confidential settlement (Verified Compl. ¶ 57, Exh. P). The Ingham Circuit Court held a hearing that same day and entered an order dissolving the TRO, disbursing the Bush-Smith Barney account funds "in accordance with letters of authority signed by the parties," and dismissing the case with prejudice (*id.* ¶ 58). The Ingham Circuit Court also entered an Order Substituting Plaintiff in the *Bush* litigation, replacing Zausmer with Midwest as the "real party in interest" to pursue the cause of action against Bush (*id.* ¶ 57). On August 2, 2008, the Ingham Circuit Court entered an order in the *Albion* litigation approving the sale of the rights of the cemetery trust funds to Midwest and ordered that the assets be delivered "free and clear of all liabilities" (Midwest Mot. Exh. 13).

The *Meyer* litigation is still pending in Johnson Circuit Court in Indiana. Indeed, in August 2008, it was consolidated for pretrial purposes with a class action brought by William Fishback and

Angela K. Farno: *Fishback, Farno et al. v. Ansure Mortuaries,* 49D13-0801-PL-003941. Fishback and Farno served Bush as a defendant named in their class action. The Johnson Circuit Court heard multiple motions to dismiss the cases during the summer of 2008 and, like the tasks undertaken by the Ingham Circuit Court in Michigan the previous summer, entered orders establishing claims filing procedures, establishing methods for providing notice to creditors, and freezing and releasing funds. In February 2009, the Johnson Circuit Court granted receiver Gray's Motion to Engage Business Consultant. In March 2009, the Meyer family and the state of Indiana filed a Motion to Approve Procedures for Sale of Ansure Businesses, a motion that remains pending.

The *Bush* litigation and the *Nelms* litigation brought by Zausmer have both since closed; however, the Ingham Circuit Court continues to supervise the conservatorship of the Michigan cemeteries in the *Albion* litigation and the *Chapel Hill* litigation. The Ingham Circuit Court, which consolidated the two remaining Michigan cases in December 2008, has recently entered orders amending the Asset Purchase Agreement and Closing Agreement and extending and modifying the conservatorship.

B. *Procedural Posture*

This Court's involvement in this tangled web of cemetery and trust fund sales began on July 2, 2008, when plaintiff Gray filed her Verified Complaint and Motion for Temporary Restraining Order in this Court against Bush, conservator Zausmer, newly appointed Michigan cemetery commissioner Stephen Gobbo, and Midwest. Plaintiff's complaint in this Court arises from her allegation that the money enjoined and subsequently released by the Ingham Circuit Court – approximately $13.7 million – includes funds that were improperly or illegally transferred from Indiana business trust funds (including the Chapel Hill trust assets) to Bush's Smith Barney account

(Verified Compl. ¶ 48). Plaintiff's complaint is brought under the diversity jurisdiction statute, 28 U.S.C. § 1332. There is no federal question. This Court denied plaintiff's motion for a TRO on July 3, 2008 (Dkt 4), and plaintiff subsequently withdrew her Motion for a Preliminary Injunction (Dkt 65).

Plaintiff filed an Amended Complaint on August 14, 2008 (Dkt 43). The Amended Complaint eliminated commissioner Gobbo as a party and alleges the following overlapping counts:

1. Conversion (as to defendant Bush)
2. Statutory Conversion (as to defendant Bush)
3. Fraud (as to defendant Bush)
4. Civil Conspiracy (as to defendant Bush)
5. Unjust Enrichment (as to defendants Midwest & Bush)
6. Constructive Fraud (as to defendants Midwest, Bush & Zausmer)
7. Breach of Fiduciary Duty (as to defendant Zausmer)
8. Civil Conspiracy (as to defendants Midwest & Zausmer)
9. Conversion (as to defendant Midwest)
10. Statutory Conversion (as to defendant Midwest)
11. Civil Conspiracy (as to defendant Midwest)
12. Constructive Trust (as to defendants Midwest, Bush, & Zausmer)
13. Injunctive Relief (as to all defendants)

Following a pre-motion conference in September 2008, this Court issued a schedule permitting the parties to brief the abstention question Midwest posed (Dkts 63-64). Throughout the fall of 2008, this Court granted conservator Zausmer stipulations to extend the time for him to file an answer to plaintiff's amended complaint on representations that the parties were negotiating his stipulated dismissal from the case, if not a settlement of the entire case. Although Zausmer was eventually dismissed on March 4, 2009 (Dkts 101-02), settlement negotiations among the remaining parties were not fruitful, requiring this Court to now consider the submissions and accompanying exhibits on the threshold question of abstention.

II

A. *Overview of Burford Abstention Doctrine*

Federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress; however, the duty is not absolute. *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716 (1996). Defendant Midwest's motion poses the single argument, under *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943), that this Court should decline to decide the merits of the questions presented in plaintiff's lawsuit.

The parties agree that the *Burford* abstention doctrine provides that "[w]here timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar;' or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *Habich v. City of Dearborn,* 331 F.3d 524, 532 (6th Cir. 2003) (quoting *New Orleans Public Serv., Inc. v. Council of the City of New Orleans,* 491 U.S. 350, 361 (1989) (*"NOPSI"*)). *Burford* abstention is concerned with potential disruption of a state administrative scheme, not the mere existence of such a scheme. *Adrian Energy Assocs. v. Mich. Pub. Serv. Comm'n,* 481 F.3d 414, 423 (6th Cir. 2007).

"Ultimately, what is at stake is a federal court's decision, based on a careful consideration of the federal interests in retaining jurisdiction over the dispute and the competing concern for the 'independence of state action,' *Burford,* 319 U.S. at 334; 63 S. Ct. at 1107, that the State's interests are paramount and that a dispute would best be adjudicated in a state forum. *See NOPSI, supra,* 491 U.S. at 363; 109 S.Ct. at 2515 (question under *Burford* is whether adjudication in federal court

would 'unduly intrude into the processes of state government or undermine the State's ability to maintain desired uniformity'). This equitable decision balances the strong federal interest in having certain classes of cases, and certain federal rights, adjudicated in federal court, against the State's interests in maintaining 'uniformity in the treatment of an essentially local problem,' 491 U.S. at 362; 109 S.Ct. at 2515 (quoting *Alabama Pub. Serv. Comm'n, supra,* at 347, 71 S.Ct., at 767), and retaining local control over 'difficult questions of state law bearing on policy problems of substantial public import." *Quackenbush,* 517 U.S. at 728.

### B. *Parties' Arguments*

Midwest argues that Michigan has an interest in protecting the public from unscrupulous cemetery operators and that the ability of its state regulators to protect, preserve, and prosecute claims relating to cemetery trust funds is paramount. Midwest points out that conservator Zausmer had the power, subject to state court supervision, to establish a procedure for the filing of proofs of claims and determinations as to claims of creditors and that Zausmer was charged with taking ownership of the trust funds and protecting cemetery assets so that they could be sold to a responsible owner. Midwest also points out that the Michigan courts have been working for two years with conservator Zausmer to restore the solvency of the Michigan cemeteries for the benefit of the general public.

Midwest opines that for a federal court to now step in and second guess the negotiations and change in ownership will disrupt the entire process. For example, Midwest points out that Midwest still retains the option to unwind the purchase agreement. Midwest concludes that this case does not belong in federal court but in state courts, where each state can administer the insolvent cemeteries

in its state and make the best arrangements to protect the members of the public who were laid to rest in its cemeteries or who purchased cemetery services and merchandise for their future needs.

Plaintiff Gray responds that *Burford* abstention is inapplicable to cases such as hers, where both money damages and equitable relief are sought. Plaintiff argues that even assuming *Burford* abstention is applicable, there are "no difficult questions of state law bearing on policy problems of substantial public import." Further, plaintiff emphasizes that Indiana and Michigan have like interests in the orderly administration of cemeteries and the return of any pilfered trust funds. According to plaintiff, this Court can apply Indiana law and adjudicate her claims to the Bush-Smith Barney funds with "no direct relationship" to the conservatorship in the *Albion* litigation and with only a "tangential effect" on the sale of the Michigan cemeteries. Plaintiff analogizes to *Olden v. LaFarge Corp.,* 203 F.R.D. 254 (E.D. Mich. 2001), and *AmSouth Bank v. Dale,* 386 F.3d 763, 783 (6th Cir. 2004), cases where application of *Burford* abstention was rejected.

C. *Analysis*

As a threshold matter, the United States Supreme Court has rejected the rigid proposition that abstention is a technical rule of equity procedure. *Quackenbush,* 517 U.S. at 718. The Supreme Court has not held that abstention principles are completely inapplicable to actions "at law." *Id.* at 719, 730-31. The Supreme Court has instead held that "the authority of a federal court to abstain from exercising its jurisdiction extends to all cases in which the court has discretion to grant or deny relief." *Id.* at 718.

As the party seeking *Burford* abstention, Midwest bears the burden of showing that abstention is the appropriate course. After giving due consideration to the narrow range of

circumstances in which a district court may exercise its discretion to apply *Burford* abstention, this Court agrees with Midwest that *Burford* abstention is indicated on these facts.

First, plaintiff's complaint alleges only state law tort claims. No federal interests have been articulated. Michigan and Indiana, in contrast, have pronounced interests in this case. The rights of burial are public rights uniquely reserved to the states to protect the life, health, comfort and well-being of the community. *Wetherby v. Jackson,* 249 N.W. 484, 484 (Mich. 1933); *Park Hill Dev. Co. v. City of Evansville,* 130 N.E. 645, 648 (Ind. 1921). Both Michigan and Indiana have promulgated complex administrative processes for regulating cemeteries and their assets. Indeed, the Michigan Legislature amended the Cemetery Regulation Act, effective January 12, 2009, to provide for new standards regarding the trusting of certain funds; provide new qualifications for owners, operators, employees and transferees of cemeteries under certain circumstances; and allow the cemetery commissioner to conduct certain investigations.

Second, the state law claims arising from the trust raiding schemes alleged in this case have been and continue to be thoroughly examined in both Michigan and Indiana state courts under each state's laws and requirements. Courts in both states have been working for years on negotiations, bidding processes, and purchasing arrangements to restore the solvency and effective administration of the numerous affected cemeteries. This Court is convinced that the state courts are uniquely positioned to review plaintiff's claims relating to the handling of the cemetery assets, particularly where, as here, the Michigan conservatorship and the Indiana receivership cases remain pending in the state courts. *See, e.g., Dykhouse v. Corporate Risk Mgmt. Corp.,* 961 F.2d 1576, *3 (6th Cir. 1992) (unpublished decision concluding that the district court should abstain from deciding state law claims where its determination would directly affect the ability of creditors to recover under the

insurance liquidation procedure and where the specialized state liquidation proceedings would be disrupted by the continued prosecution of the counterclaims in the federal action).

By filing this federal action, plaintiff bypassed the option of seeking her relief in state court, either in the Ingham Circuit Court overseeing the Michigan conservatorship or in the Johnson Circuit Court that created her receivership. Plaintiff concedes that she did not seek her own restraining order over the Bush-Smith Barney funds to which she now lays formal claim. She also had the option, at least in Michigan, to force compliance with the pertinent provisions of the Cemetery Regulation Act. *See* MICH. COMP. LAWS § 328.234 (providing that "the [Michigan] department [of labor and economic growth] or any other person, in order to force compliance with this act, may bring an action in a circuit court in any county in which the registrant or any other person has solicited or sold prepaid contracts, whether or not that person has purchased a prepaid contract or is personally aggrieved by a violation of this act. The court may award damages, issue equitable orders in accordance with the Michigan court rules to restrain conduct in violation of this act, and award reasonable attorney fees and costs to a prevailing party.").

Plaintiff's attempt to obtain money damages and injunctive relief in federal court presents matters of great concern to both states. If this Court entertained the present case on its merits, its work would interfere with the investigative and review work already undertaken by the states and concomitantly with the formulation of uniform state policies on the problems generally posed by trust raiding. By abstaining, this Court avoids undermining the states' unique abilities and long efforts to maintain desired uniformity in their current and future settlements of trust raiding schemes. Hence, it is not the mere existence of the state administrative processes governing the civil claims

that dissuades this Court from exercising its jurisdiction but the impermissible disruption of the work that has been performed and will still be performed within these state administrative processes.

The cases to which plaintiff analogizes are factually distinguishable and therefore do not require a different result. In *Olden,* 203 F.R.D. at 268, the district court denied the defendant's *Burford* abstention motion because any injunctive relief it ordered had only the "potential" to interfere with an existing state court consent judgment. In *AmSouth Bank,* 386 F.3d at 783-84, the Sixth Circuit Court of Appeals held that *Burford* abstention was not warranted where the declaratory judgment action did not threaten disruption of the state liquidation proceedings. Here, as Midwest points out, plaintiff's action in federal court "goes to the heart of one of the biggest assets marketed and sold by the Michigan Conservator – the right to recover the assets of the trusts through litigation against the wrongdoers who[se] actions led to the insolvency of 28 Michigan cemeteries" (Midwest Reply 8).

D. *Disposition*

Having determined not to entertain the merits of plaintiff's claims, the remaining question is whether this Court should dismiss plaintiff's intertwined claims altogether or enter a stay to merely postpone adjudication of the dispute. The Sixth Circuit Court of Appeals has instructed that "even when abstention is appropriate, a district court should stay, not dismiss, the federal suit." *Habich,* 331 F.3d at 534 n.4. The Sixth Circuit reasoned that "[a]lthough staying the suit instead of dismissing it will often reflect an abundance of caution, leaving the district court with 'nothing left to do but clear the case number off of its docket once the state proceedings conclude,' staying the suit protects the plaintiff whose federal claims were not resolved on the merits in state court." *Id.*

Here, however, there are no federal questions for which this Court should reserve this forum. Consequently, this Court dismisses this action without prejudice to plaintiff's right to proceed in the state courts to secure a determination of the questions of state law.

III

This Court concludes that to exercise its jurisdiction over this matter would unduly interfere with the independence of the concurrent state actions. Therefore, this Court grants defendant Midwest Memorial Group's Motion for Abstention (Dkt 85).

An Order of Dismissal will be entered consistent with this Opinion.


Dated: August 17, 2009 /s/Janet T. Neff
JANET T. NEFF
UNITED STATES DISTRICT JUDGE