UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STONEMOR OPERATING, LLC, *et al.*,

       Plaintiffs,

v.

CRAIG R. BUSH, *et al.*,

       Defendants.

_____/

Case No. 1:08-cv-631

HON. JANET T. NEFF

**OPINION**

      Pending before the Court is Defendant Craig R. Bush's Motion for Judgment on the Pleadings under FED. R. CIV. P. 12(c) and Summary Judgment under FED. R. CIV. P. 56 (Dkt 91), and Defendant Bush's Motion to Strike Plaintiffs' Supplemental Brief (Dkt 136).  Plaintiffs oppose both motions (Dkts 94, 138).  Having reviewed the written submissions and accompanying exhibits, the Court finds that the relevant facts and arguments are adequately presented in these materials and that oral argument would not aid the decisional process.  *See* W.D. Mich. LCivR 7.2(d).  For the reasons that follow, the Court denies the Motion to Strike and denies the Motion for Judgment on the Pleadings under FED. R. CIV. P. 12(c) and Summary Judgment under FED. R. CIV. P. 56.

**I.  BACKGROUND**

**A.**    **Factual Background**

      As recounted more fully in this Court's prior Opinion and Order (Dkts 103, 104), this case is but one of several in a tangled web of cemetery and trust fund sales cases that were filed in Michigan and Indiana after Michigan regulators investigated the records and conduct of registrants

under Michigan's Cemetery Regulation Act, MICH. COMP. LAWS § 456.521 *et seq.*, and discovered that certain trust monies that had been set aside to care for cemeteries and burials were instead being used to fund the purchases of cemeteries and for other improper purposes. In addition to the civil lawsuits that were filed, the investigation resulted in criminal charges brought against Clayton Smart, Robert Nelms, and others who facilitated the alleged trust fund raiding.

The transaction that is the focus of the motion at bar is Defendant Bush's 2004 loan to Nelms. In 2004, Defendant Bush, a Michigan attorney, maintained a personal investment account with Smith Barney (Bush Aff. [Dkt 92-2] ¶ 2). Mark Singer served as Defendant Bush's investment manager at Smith Barney (*id.* ¶ 3). In the affidavit Defendant Bush submitted to this Court, Defendant Bush attests that Singer contacted him in November 2004 regarding "a short-term investment opportunity" (*id.*). Defendant Bush attests that Singer told him that Nelms, an Indiana investor, was seeking a 30-day "bridge loan" in order to fund the purchase of certain cemeteries (*id.* ¶ 4). The package of properties for sale included Chapel Hill Memorial Gardens (Chapel Hill) in Grand Rapids, Michigan as well as other cemeteries and funeral homes in Indiana (Verified First Amend. Compl. ¶ 7). As required by law, the property owners had maintained trust accounts, including perpetual care trust accounts for the cemeteries, merchandise and services cemetery trusts, and escrow accounts for pre-need planning provided through the cemeteries and funeral homes (*id.* ¶ 13). Defendant Bush attests that Singer said the requested loan amount, $13.5 million, was for approximately one-half of the $27 million purchase price of the cemeteries and funeral homes (Bush Aff. ¶ 4).

According to Defendant Bush, Concordia Management Services, LLC (Concordia), of which Defendant Bush was the president and sole member, tendered a loan on December 21, 2004 in

exchange for a secured promissory note for repayment of the loan (Bush Aff. ¶ 9). The promissory note, which references a $15 million loan, is purportedly entered into between Concordia (the lender) and Nelms; Ansure Mortuaries of Indiana, LLC (Ansure); Memory Gardens Management Corp. (MGMC); Forest Lawn Funeral Home Properties, LLC; and 3733 North Meridian Street, LLC; jointly and severally (the debtors) (Promissory Note, Ex. 1 to Bush Aff.). Nelms is the sole shareholder and owner of Ansure (Verified First Amend. Compl. ¶¶ 10, 12). MGMC provides centralized managerial and administrative services for all Ansure subsidiaries (*id.* ¶ 11). Plaintiffs allege that Nelms directed Title Services, LLC to disburse $13.5 million to the sellers for the purchase of properties (*id.* ¶ 21). On or about that same day, December 21, 2004, the sellers and Nelms/Ansure closed on the sale (*id.* ¶ 22).

Immediately following the purchase, Nelms replaced the current trustee (Forethought Federal Savings Bank) with an Indiana bank (Community Trust and Investment, Inc.) (Verified First Amend. Compl. ¶¶ 14, 23). Through a "Successor Trustee/Escrow Agent Agreement," Forethought was directed to liquidate the majority of the cemetery and funeral trust holdings—$23,310,258.78—and transfer them to Community Trust (*id.* ¶¶ 24, 25).

Defendant Bush attests that on December 29, 2004, just eight days after the loan was tendered, Singer contacted him and told him that the "loan" had been repaid in full, with interest (Bush Aff. ¶ 10.1). Plaintiffs allege that Nelms directed a wire transfer of $13,758,253.58—the loan amount plus interest of $246,663.45—from the new account at Community Trust to Defendant Bush's Smith Barney account (Verified First Amend. Compl. ¶ 27). Defendant Bush attests that it was not until early 2008 that it was first brought to his attention that Nelms allegedly repaid his loan with trust funds (Bush Aff. ¶ 11). According to Defendant Bush, he relied on Singer's

3

representations that Citigroup would ultimately fund the transaction and that the loan was secured by the assets of the cemeteries (*id.* ¶ 6).

**B.    Procedural Posture**

The case at bar was initiated on July 2, 2008 by Lynette Gray, invoking this Court's diversity jurisdiction, 28 U.S.C. § 1332.  Gray, an Indiana resident, was appointed receiver in Indiana for Ansure and the other businesses Nelms acquired, including Chapel Hill (Verified Compl. ¶¶ 1, 33). Receiver Gray filed a Verified Complaint and Motion for Temporary Restraining Order against Bush; Mark Zausmer, a Michigan attorney named conservator over certain Michigan cemeteries and funeral homes, including Chapel Hill; then newly appointed Michigan Cemetery Commissioner Stephen Gobbo; and Midwest Memorial Group, LLC (Midwest), which purchased certain other cemeteries and funeral homes not at issue in this motion, cemeteries and funeral homes that Defendant Bush owned.

Receiver Gray filed a Verified First Amended Complaint on August 14, 2008 (Dkt 43). The Verified First Amended Complaint alleges that certain money enjoined and subsequently released by the Circuit Court for Ingham County, Michigan—approximately $13.7 million—includes funds that were improperly or illegally transferred from Indiana business trust funds (including the Chapel Hill trust assets) to Defendant Bush's Smith Barney account (Verified First Amend. Compl. ¶ 48). The Verified First Amended Complaint eliminated Commissioner Gobbo as a party and alleged the following thirteen counts:

        1.    Conversion (as to Defendant Bush)
        2.    Statutory Conversion (as to Defendant Bush)
        3.    Fraud (as to Defendant Bush)
        4.    Civil Conspiracy (as to Defendant Bush)
        5.    Unjust Enrichment (as to Defendants Midwest & Bush)
        6.    Constructive Fraud (as to Defendants Midwest, Bush & Zausmer)

       7.       Breach of Fiduciary Duty (as to Defendant Zausmer)
       8.       Civil Conspiracy (as to Defendants Midwest & Zausmer)
       9.       Conversion (as to Defendant Midwest)
       10.     Statutory Conversion (as to Defendant Midwest)
       11.     Civil Conspiracy (as to Defendant Midwest)
       12.     Constructive Trust (as to Defendants Midwest, Bush, & Zausmer)
       13.     Injunctive Relief (as to all Defendants)

Following a pre-motion conference in September 2008, this Court issued a schedule permitting the parties to brief a threshold question of abstention posed by Defendant Midwest as well as Defendant Bush's proposed dispositive motion (Dkts 63, 64). Throughout the fall of 2008, this Court granted Conservator Zausmer stipulations to extend the time for him to file an answer to Receiver Gray's Verified First Amended Complaint on representations that the parties were negotiating his stipulated dismissal from the case, if not a settlement of the entire case. Although Conservator Zausmer was eventually dismissed on March 4, 2009 (Dkts 101, 102), settlement negotiations among the remaining parties were not fruitful, and this Court issued a decision on the threshold question of abstention. This Court granted Defendant Midwest's motion, holding that its exercise of jurisdiction over this matter would unduly interfere with the independence of the multiple concurrent state actions; however, the Sixth Circuit Court of Appeals disagreed, opining that dismissal of the case was not justified.

The posture of this case now necessitates a decision on Defendant Bush's dispositive motion. The successors to Receiver Gray's interests—Stonemor Operating, LLC, Stonemor Indiana, LLC, Stonemor Indiana Subsidiary, LLC, Covington Memorial Gardens, Inc., Forest Lawn Memory Gardens, Inc., Ohio Cemetery Holdings, Inc., and Independence Trust Company— have since been substituted as plaintiffs (Stip. & Order, Dkts 121, 122). The Court held a status conference in October 2011, and the parties filed supplemental briefing in December 2011 in support of and in

opposition to Defendant Bush's motion. Defendant Bush filed a Motion to Strike Plaintiffs' supplemental brief (Dkt 136), a motion that this Court will also decide herein.

## II. ANALYSIS

**A.    Defendant Bush's Combined Motion**

Defendant Bush proposes two arguments in support of his combined motion, both of which are directed only to Counts 1 and 2 of the Verified First Amended Complaint, the conversion counts alleged against him (Dkt 92 at 9).[1] Counts 1 and 2 allege that Defendant Bush wrongfully exerted control over the trust funds in the approximate amount of at least $13,758,253.58, funds that were diverted to his sole control in his Smith Barney account (Verified First Amend. Compl. ¶¶ 60-76).

**1.    *Judgment on the Pleadings—Statutes of Limitation***

Defendant Bush first argues that the July 2, 2008 conversion claims, which arise from the December 29, 2004 repayment of the Bush-Nelms "loan," were filed long after the expiration of Michigan's three-year limitations period, MICH. COMP. LAWS § 600.5805(10), and Indiana's two-year limitation period, IND. CODE § 34-11-2-4 (Dkt 92 at 5, 9-10). Defendant Bush argues that he is therefore entitled to judgment on the pleadings under Federal Rule of Civil Procedure 12(b) and his second affirmative defense in which he alleged that Plaintiffs' claims are "barred in whole or part by the governing period of limitations and/or the equitable doctrine of laches" (*id.* at 5). Defendant Bush argues that the allegations against him cannot be styled as fraud in order to avoid a statute of limitations defense (Dkt 92 at 11-12). According to Defendant Bush, Plaintiffs' fraud claim is "transparently nothing more than a conversion claim" (*id.* at 14). Defendant Bush argues that

---

[1]As Plaintiffs point out in their response brief (Dkt 94 at 18 n.9 & 29 n.16), Defendant Bush does not discuss Plaintiffs' other claims against him except in a footnote to the brief supporting his motion (Dkt 92 at 13 n.6).

Plaintiffs have failed to (and cannot) allege any "affirmative" conduct that he undertook to conceal Plaintiffs' conversion claims (*id.* at 15).

Plaintiffs oppose Defendant Bush's motion, responding that both the Michigan and Indiana periods of limitation are tolled when a defendant engages in the fraudulent concealment of a claim (Dkt 94 at 20). According to Plaintiffs, Defendant Bush conspired to "loan" $13.5 million to Nelms/Ansure with the understanding that he would be repaid with Indiana trust funds at an outrageous interest rate, that the parties would create "loan" documents in an attempt to legitimize the transaction, avoid inquiry, and conceal the conversion (Dkt 94 at 23).

Defendant Bush's argument lacks merit.

A Rule 12(c) motion may be brought "[a]fter the pleadings are closed–but early enough not to delay trial." FED. R. CIV. P. 12(c). For purposes of a motion pursuant to Rule 12(c), the complaint must be construed in the light most favorable to the nonmoving party; all well-pleaded material allegations of the pleadings must be taken as true; the motion is granted only when the moving party is entitled to judgment as a matter of law. *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007); *Ross, Brovins & Oehmke, P.C. v. Lexis Nexis Group, a Div. of Reed Elsevier Group, PLC*, 463 F.3d 478, 487 (6th Cir. 2006). A complaint must present "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007) (retiring the "no set of facts" formulation); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (clarifying that its decision in *Twombly* expounded the pleading standard for "all civil actions"). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. The determination that

a complaint was filed outside of the applicable limitations period is a conclusion of law. *CMACO Auto. Sys., Inc. v. Wanxiang Am. Corp.,* 589 F.3d 235, 242 (6th Cir. 2009).

In Michigan and Indiana, where a person "fraudulently conceals the existence" of a claim "from the knowledge of the person entitled to sue on the claim," an action may be brought after the claimant discovers (or should have discovered) the claim. MICH. COMP. LAWS § 600.5855 (within two years after discovery); IND. CODE § 34-11-5-1 (within the period of limitations for the claim brought). *See also Atlantic Richfield Co. v. Monarch Leasing Co.*, 84 F.3d 204, 205 (6th Cir. 1996) (instructing that in diversity cases, state statutes of limitations establish the controlling period of limitations).

In the context of MICH. COMP. LAWS § 600.5855, "[f]raudulent concealment means employment of an artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing a right of action. The acts relied on must be of an affirmative character and fraudulent." *Grebner v. Runyon*, 347 N.W.2d 741, 747 (Mich. Ct. App. 1984) (quoting *De Haan v. Winter*, 241 N.W. 923, 924 (Mich. 1932)). Similarly, to establish "fraudulent concealment" under IND. CODE § 34-11-5-1, a plaintiff must establish "'affirmative acts of concealment ... calculated to mislead and hinder a plaintiff'" and "'[t]here must be some trick or contrivance" designed "to exclude suspicion and prevent inquiry.'" *Johnson v. Blackwell*, 885 N.E.2d 25, 32 (Ind. Ct. App. 2008) (citation omitted).

Here, Plaintiffs specifically pleaded the acts that comprised the fraudulent concealment of their conversion claims. Plaintiffs alleged that Defendant Bush and Nelms represented, through their statements and/or acts, including their silence, that the transfer of the trust funds to Defendant Bush was not improper, illegal, and/or fraudulent (Verified First Amend. Compl. ¶ 78). Plaintiffs alleged

8

that Defendant Bush conspired with Nelms and others to loan $13.5 million to Nelms/Ansure with the understanding that Defendant Bush would be repaid with Indiana trust funds, plus interest (*id.* ¶¶ 89-91).  Plaintiffs describe how Defendant Bush and Nelms attempted to legitimize the transaction, alleging that Defendant Bush and Nelms arranged for purported "loan" documents between Concordia and Ansure (*id.* ¶ 20).  Further, Plaintiffs describe the attempts to prevent inquiry and escape investigation, alleging that the current trustee, Indiana Business Trusts, "a nationally recognized institution which specializes in acting as a trustee and asset manager for cemetery and funeral trusts," was replaced with Community Trust, a small Indiana bank with "little or no experience in acting as a trustee of cemetery and funeral trusts" (*id.* ¶¶ 14, 23).  Receiver Gray was appointed on January 17, 2008 and diligently filed this action on July 2, 2008 (*id.* ¶ 28).

Accepting these allegations by Plaintiffs as true, the allegations are sufficient to state a claim of fraudulent concealment that tolls the Michigan and Indiana periods of limitation for a conversion claim.  Therefore, Defendant Bush's request for judgment as a matter of law on Counts 1 and 2 is denied.

**2.**     ***Summary Judgment—Good Faith***

Under Federal Rule of Civil Procedure 56, Defendant Bush alternatively argues that Plaintiff's conversion claims fail because Defendant Bush received the repayment of his loan in good faith, without knowledge of misappropriation and in exchange for valuable consideration (Dkt 92 at 5, 17).  According to Defendant Bush, Plaintiffs cannot maintain an action for conversion of funds against him where he has no obligation under either Michigan or Indiana case law to return the funds (*id.*).

In response, Plaintiffs opine that there are genuine issues of material fact regarding what Defendant Bush knew or should have known regarding the Bush-Nelms transaction and the depth of Defendant Bush's involvement in the conversion and misappropriation of Indiana trust funds (Dkt 94 at 29-30). Plaintiffs assert that Defedant Bush may claim to be an "innocent" or "unwitting" participant but Plaintiffs' competing claims demonstrate a genuine issue of material fact (*id.*).

In resolving Defendant Bush's second argument, this Court must draw all inferences in a light most favorable to Plaintiffs but may grant summary judgment "when 'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *See Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

Although Defendant Bush argues that he received the repayment of his loan in good faith, Plaintiffs have sufficiently raised questions as to whether a jury could find otherwise, making the claims not appropriate for summary judgment. Indeed, granting summary judgment on this issue would be premature inasmuch as the parties have not yet engaged in any discovery. "It is well-established that the plaintiff must receive 'a full opportunity to conduct discovery' to be able to successfully defeat a motion for summary judgment." *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"); *White's Landing Fisheries, Inc. v. Buchholzer*, 29 F.3d 229, 231-32 (6th Cir. 1994) ("[in light of *Anderson* and *Celotex*,] a grant of

summary judgment is improper if the non-movant is given an insufficient opportunity for discovery"). Therefore, the Court also declines to enter summary judgment in Defendant Bush's favor on Counts 1 and 2.

**B.      Defendant Bush's Motion to Strike**

Motions to strike are governed by Federal Rule of Civil Procedure 12(f), which provides that a court "may strike *from a pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Defendant Bush contends that Plaintiffs' supplemental brief must be struck because it improperly raised new arguments and new legal theories in their supplemental briefing in support of their opposition to his motion (Dkt 137 at 4). Plaintiffs opine that Defendant Bush's Motion to Strike their supplemental brief asks the Court to "put on blinders and rule on his more than three-year-old motion [] while ignoring relevant factual and legal developments that have [since] arisen" (Dkt 138 at 2).

Even assuming arguendo that it has discretion to strike Plaintiffs' supplemental brief, the Court declines to do so. The Court did not find the supplemental briefing of either side particularly helpful to its decision on Defendant Bush's Motion for Judgment on the Pleadings under FED. R. CIV. P. 12(c) and Summary Judgment under FED. R. CIV. P. 56 (Dkt 91), but the Court is not persuaded by Defendant Bush's arguments that Plaintiffs' supplemental brief would be properly struck. The motion is therefore denied.

### III.  CONCLUSION

For the foregoing reasons, Defendant Bush's Motion for Judgment on the Pleadings under FED. R. CIV. P. 12(c) and Summary Judgment under FED. R. CIV. P. 56 (Dkt 91) is DENIED, and his Motion to Strike Plaintiffs' Supplemental Brief (Dkt 136) is DENIED. An Order will be entered

consistent with this Opinion, and this case will be noticed for an additional Scheduling Conference pursuant to FED. R. CIV. P. 16.


DATED: August  27 , 2012              /s/ Janet T. Neff
                                      JANET T. NEFF
                                      United States District Judge