UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STONEMOR OPERATING, LLC, *et al.*,

        Plaintiffs,                      Case No. 1:08-cv-631

v.                                       HON. JANET T. NEFF

CRAIG R. BUSH,

        Defendant.
_____/

**OPINION**

Pending before the Court are two related motions: Plaintiffs' Motion to Strike Defendant's Notice of Non-Party Fault (Dkt 227) and Defendant's Motion for Partial Summary Judgment (Dkt 236). Having reviewed the written submissions and accompanying exhibits and being familiar with this 2008 case, the Court finds that the relevant facts and arguments are adequately presented in these materials and that oral argument would not aid the decisional process. *See* W.D. Mich. LCivR 7.2(d). For the reasons that follow, the Court determines that Plaintiffs' Motion to Strike Defendant's Notice of Non-Party Fault (Dkt 227) is properly granted and Defendant's Motion for Partial Summary Judgment (Dkt 236) is properly denied.

**I. BACKGROUND**

As recounted more fully in this Court's prior Opinions and Orders, this case is but one of several in a tangled web of cemetery and trust fund sales cases that were filed in Michigan and Indiana after Michigan regulators investigated the records and conduct of registrants under Michigan's Cemetery Regulation Act, MICH. COMP. LAWS § 456.521 *et seq.*, and discovered that certain trust monies that had been set aside to care for cemeteries and burials were instead being

used to fund the purchases of cemeteries and for other improper purposes.  In addition to the civil lawsuits that were filed, the investigation resulted in criminal charges brought against Clayton Smart, an Oklahoma resident; Robert Nelms, an Indiana investor; and others who facilitated the alleged trust fund raiding.

In 2004, Nelms concluded negotiations for the purchase of certain business entities that owned and operated cemetery properties and/or funeral homes in Indiana, Ohio and Michigan (Statement of Material Facts[1] [SMF], ¶ 1).  In furtherance of this agreement, Nelms created an Indiana limited liability company, Ansure Mortuaries of Indiana, LLC (Ansure), as a holding company for the business entities that he was purchasing (*id.* ¶ 2).  Nelms was the sole shareholder and owner of Ansure (*id.*).

Defendant Bush, now the sole defendant in the case at bar, maintained a personal investment account with Smith Barney in 2004 (Dkt 92-2, Bush Aff. ¶ 2).  Mark Singer served as Defendant Bush's investment manager at Smith Barney (*id.* ¶ 3).  In the affidavit Defendant Bush submitted to this Court, Defendant Bush, a Michigan attorney, attests that Singer contacted him in November 2004 regarding "a short-term investment opportunity" (*id.*).  Defendant Bush attests that Singer told him that Nelms, an Indiana investor, was seeking a 30-day "bridge loan" in order to fund the purchase of certain cemeteries from James R. Meyer, Fred W. Meyer, Tom Meyer, Nancy J. Cade, and F.T.J. Meyer Associates, LLC (collectively, "the Meyers") (Bush Aff. ¶ 4; Dkt 43, Verified First Amend. Compl. ¶¶ 7, 10).  The package of properties for sale included Chapel Hill Memorial

---

[1] The Court has relied on only those statements of fact by Defendant Bush that Stonemor admitted in response.  Defendant Bush's Statement of Facts (Dkt 240) and StoneMor's response (Dkt 241) were filed under seal to comply with their stipulated Protective Orders, which dictate that any document that "references the terms of or attaches any of the Confidential Settlement Agreements" shall be filed under seal (Dkt 205, Order at ¶ 9; Dkt 212, Order at ¶ 9).

Gardens (Chapel Hill) in Grand Rapids, Michigan as well as other cemeteries and funeral homes in Indiana (Verified First Amend. Compl. ¶ 7).  As required by law, the property owners had maintained trust accounts, including perpetual care trust accounts for the cemeteries, merchandise and services cemetery trusts, and escrow accounts for pre-need planning provided through the cemeteries and funeral homes (*id.* ¶ 13).  Defendant Bush attests that Singer said the requested loan amount, $13.5 million, was for approximately one-half of the $27 million purchase price of the cemeteries and funeral homes (Bush Aff. ¶ 4).

According to Defendant Bush, Concordia Management Services, LLC (Concordia), of which Defendant Bush was the president and sole member, tendered a loan on December 21, 2004 in exchange for a secured promissory note for repayment of the loan (Bush Aff. ¶ 9).  The promissory note, which references a $15 million loan, was purportedly entered into, jointly and severally, between Concordia (the lender) and Nelms; Ansure; Memory Gardens Management Corp. (MGMC); Forest Lawn Funeral Home Properties, LLC; and 3733 North Meridian Street, LLC (Promissory Note, Ex. 1 to Bush Aff.).  MGMC provides centralized managerial and administrative services for all Ansure subsidiaries (Verified First Amend. Compl. ¶ 11).  Plaintiffs allege that Nelms directed Title Services, LLC to disburse $13.5 million to the sellers for the purchase of properties (*id.* ¶ 21). On or about that same day, December 21, 2004, the sellers and Nelms/Ansure closed on the sale (*id.* ¶ 22).

Immediately following the purchase, Nelms replaced the current trustee (Forethought Federal Savings Bank) with an Indiana bank (Community Trust and Investment, Inc.) (Verified First Amend. Compl. ¶¶ 14, 23).  Through a "Successor Trustee/Escrow Agent Agreement," Forethought was

3

directed to liquidate the majority of the cemetery and funeral trust holdings—$23,310,258.78—and transfer them to Community Trust (*id.* ¶¶ 24, 25).

Defendant Bush attests that on December 29, 2004, just eight days after the loan was tendered, Singer contacted him and told him that the "loan" had been repaid in full, with interest (Bush Aff. ¶ 10.1). Plaintiffs allege that Nelms directed a wire transfer of $13,758,253.58—the loan amount plus interest of $246,663.45—from the new account at Community Trust to Defendant Bush's Smith Barney account (Verified First Amend. Compl. ¶ 27). Defendant Bush attests that not until early 2008 was it brought to his attention that Nelms allegedly repaid his loan with trust funds (Bush Aff. ¶ 11). According to Defendant Bush, he relied on Singer's representations that Citigroup would ultimately fund the transaction and that the loan was secured by the assets of the cemeteries (*id.* ¶ 6). The remainder of the December 2004 transfers went to "various Smith Barney accounts (this time in the name of Nelms), thereby misappropriating millions of dollars from the Indiana trusts for the personal use of Nelms" as well as generating fees and commissions for Singer (SMF ¶ 6).

On January 3, 2008, the Meyers filed in the circuit court for Johnson County, Indiana a Complaint on Notes and to Foreclose Mortgages: *Fred Meyer, Jr. et al. v. Ansure Mortuaries of Indiana, LLC, et al.,* 41C01-0801-MF-00001 (Verified Compl., Ex. A). On January 17, 2008, the state of Indiana (its attorney general and securities commissioner) moved to intervene and for appointment of a receiver over the mortgagor companies. *Indiana ex rel. Chris Naylor v. Robert E. Nelms et al.,* 41D03-0801-MF-00005 (Midwest Mot. Exh. 18). The Johnson Circuit Court appointed Lynnette Gray, an Indiana resident, as receiver for Ansure and the other businesses Nelms acquired from the Meyers, including Chapel Hill (Verified Compl. ¶¶ 1, 33).

Receiver Gray initiated litigation in Indiana state court against Citigroup Global Markets, Inc., d/b/a Smith Barney; Singer; Deutsche Bank Securities, Inc.; Matthew Goldberg; Nexus Fiduciary Trust Corporation f/k/a Community Trust & Investment Co. Inc.; Security Financial Management Corp., LLC; Corporate Legal Counsel, P.L.C.; and Sherry Katz-Crank (SMF ¶¶ 9, 11). Gray sought to recover from these defendants the trust assets that were purportedly misappropriated in late 2004/early 2005 from trusts associated with the same cemetery properties located in Indiana, Ohio and Michigan; lost interest; lost income; and a tripling of their claimed damages on the "theft" claim (*id.* ¶ 13).

Receiver Gray initiated the case at bar on July 2, 2008, invoking this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. Gray filed a Verified Complaint against Defendant Bush; Mark Zausmer, a Michigan attorney named conservator over certain Michigan cemeteries and funeral homes, including Chapel Hill; then newly appointed Michigan Cemetery Commissioner Stephen Gobbo; and Midwest Memorial Group, LLC (Midwest), which had purchased certain cemeteries and funeral homes that Defendant Bush owned. Plaintiff Gray's complaint in this Court arises from her allegation that certain money enjoined and subsequently released by a Michigan state court–approximately $13.7 million–includes funds that were improperly or illegally transferred from Indiana business trust funds (including the Chapel Hill trust assets) to Bush's Smith Barney account (Dkt 1, Verified Compl. ¶ 48). Commissioner Gobbo was eliminated as a party with the filing of the Verified First Amended Complaint in August 2008 (Dkt 43). Conservator Zausmer was eventually dismissed on March 4, 2009 (Dkts 101, 102).

Settlement negotiations among the remaining parties were not fruitful, and Defendant Midwest filed a Motion for Abstention (Dkt 85). Defendant Bush filed a Motion for Judgment on

5

the Pleadings and/or Summary Judgment on the conversion counts alleged against him (Dkt 91). This Court granted Defendant Midwest's motion on the threshold question of abstention, holding that its exercise of jurisdiction over this matter would unduly interfere with the independence of the multiple concurrent state actions; however, the Sixth Circuit Court of Appeals disagreed, opining that dismissal of the case was not justified (Dkts 103-07).

In August 2011, the successors to Receiver Gray's interests—StoneMor Operating, LLC, StoneMor Indiana, LLC, StoneMor Indiana Subsidiary, LLC, Covington Memorial Gardens, Inc., Forest Lawn Memory Gardens, Inc., Ohio Cemetery Holdings, Inc., and Independence Trust Company (collectively, "StoneMor")—were substituted as Plaintiffs (Stip. & Order, Dkts 119 & 121). The parties participated in mediation in September 2011, which was unsuccessful (Dkt 125). Following a Scheduling Conference with the Court, the parties filed supplemental briefing on Defendant Bush's still pending Motion for Judgment on the Pleadings and/or Summary Judgment (Dkts 133-38).

In August 2012, this Court denied Defendant Bush's motion (Op. & Order, Dkts 139 & 140). This Court held that accepting the allegations in the conversion claims as true, the allegations were sufficient to state a claim of fraudulent concealment that tolls the Michigan and Indiana periods of limitation for a conversion claim. Therefore, the Court denied Defendant Bush's request for judgment as a matter of law and further declined to enter summary judgment in Defendant Bush's favor on the claims where the parties had not yet engaged in any discovery.

In September 2012, the Court conducted a second Scheduling Conference, and the parties subsequently stipulated to entry of an Order staying and administratively closing this case until resolution of the related case in Indiana, captioned *StoneMor Operating, LLC et al. v. Smith Barney*

*et al.*, No. 41C01-0801-MF-00001 (Johnson County, Indiana) (Dkt 147). The Indiana case was resolved on April 30, 2013, and this case was re-opened in May 2013 (Dkt 151).

In June 2013, the Court conducted a third Scheduling Conference, and the parties engaged in discovery during the summer of 2013. In September 2013, StoneMor sought leave to amend its complaint to "additional and/or different facts" underlying its claims, but not to add any new or additional claims (Dkt 176, Mot. at ¶ 6). On September 30, 2013, pursuant to consent given by Defendants and leave granted by the Court, StoneMor filed a Second Amended Complaint, which presents the following eleven claims:

1. Conversion (against Defendant Bush)

2. Statutory Conversion (against Defendant Bush)

3. Fraud (against Defendant Bush)

4. Civil Conspiracy (against Defendant Bush)

5. Unjust Enrichment (against Defendants Bush & Midwest)

6. Civil Conspiracy (against Defendant Midwest)

7. Constructive Fraud (against Defendants Bush & Midwest)

8. Conversion (against Defendant Midwest)

9. Statutory Conversion (against Defendant Midwest)

10. Civil Conspiracy (against Defendant Midwest)

11. Constructive Trust (against Defendants Bush & Midwest)

(Dkt 194). StoneMor seeks "$13,758,253.58 minus a precise amount to be determined related to Chapel Hill, plus lost income in an amount to be established by expert testimony, plus exemplary damages in an amount to be determined, treble damages (with respect to Plaintiffs' statutory

conversion claim), all actual costs, interest, and fees (including attorney fees) in an amount to be determined" (Dkt 242-4 at 26, Resp. to Interrog. No. 18; SMF ¶ 12).

Following a second unsuccessful attempt at mediation in November 2013 (Dkt 215), Defendants requested a pre-motion conference, proposing to file a dispositive motion to have the Court declare, in pertinent part, that StoneMor's damages are properly reduced by the amount that StoneMor received and/or recovered to date in other litigation (Dkt 216).[2] StoneMor responded to the pre-motion conference request, asserting, in pertinent part, that this Court cannot allocate or apportion fault to any nonparties and cannot reduce the liability of either Defendant based on StoneMor's settlements with nonparties because neither Defendant filed the necessary notice of nonparty at fault pursuant to MICH. CT. R. 2.112(K) (Dkt 217). This Court issued a schedule permitting the parties to brief the question Defendants posed (Dkt 222).

On January 3, 2014, Defendants filed a Notice of Non-Party Fault identifying thirteen persons and/or entities as "non-parties who may be wholly or partially at fault for the loss sustained by Plaintiffs and for which recovery is sought in this lawsuit is required, Defendants identify the following persons and/or entities" (Dkt 225). On January 7, 2014, StoneMor filed a Motion to Strike Defendants' Notice of Non-Party Fault (Dkt 227), to which Defendants filed a Response (Dkt 233). Defendants subsequently filed their Motion for Partial Summary Judgment (Dkt 236), to which StoneMor filed a Response in opposition (Dkt 233), and Defendants filed a Reply (Dkt 247). On

---

[2]The parties' pre-motion conference papers, as well as their subsequently filed motion papers, were also filed under seal to comply with their stipulated Protective Orders (Dkts 205 & 212).

June 20, 2014, Midwest was dismissed with prejudice from this case (Stip. & Order, Dkts 253 & 254).[3]

## II. ANALYSIS

### A. Plaintiffs' Motion to Strike Defendant's Notice of Non-Party Fault

1.   *Motion Standard*

Rule 12(f) of the Federal Rules of Civil Procedure permits a district court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." It is "well established that the action of striking a pleading should be sparingly used by the courts." *Parlak v. U.S. Immigration & Customs Enforcement*, No. 05-2003, 2006 WL 3634385, at *1 (6th Cir. Apr. 27, 2006) (quoting *Brown & Williamson Tobacco Corp. v. United States,* 201 F.2d 819, 822 (6th Cir. 1953)).  "It is a drastic remedy to be resorted to only when required for the purposes of justice" and when "the pleading to be stricken has no possible relation to the controversy." *Anderson v. United States*, 39 F. App'x 132, 135 (6th Cir. 2002) (quoting *Brown & Williamson, supra*).

2.   *Discussion*

In filing his Notice of Non-Party Fault, Defendant Bush indicated that it was filed "to the extent that the Court determines that the identification of non-parties who may be wholly or partially at fault for the loss allegedly sustained by Plaintiffs and for which recovery is sought in this lawsuit is required" (Dkt 225 at 1-2).  Defendant's notice does not reference any authority containing a requirement, but it is clear that this issue is governed by MICH. CT. R. 2.112(K), which provides the following:

---

[3]Consequently, the Court has herein changed the parties' references to "Defendants" in the plural to the singular, "Defendant Bush."

**(K)** **Fault of Nonparties; Notice.**

(1) *Applicability.* This subrule applies to actions based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death to which MCL 600.2957 and MCL 600.6304, as amended by 1995 PA 249, apply.

(2) *Notice Requirement.* Notwithstanding MCL 600.6304, the trier of fact shall not assess the fault of a nonparty unless notice has been given as provided in this subrule.

(3) *Notice.*

  (a) A party against whom a claim is asserted may give notice of a claim that a nonparty is wholly or partially at fault. A notice filed by one party identifying a particular nonparty serves as notice by all parties as to that nonparty.

  (b) The notice shall designate the nonparty and set forth the nonparty's name and last known address, or the best identification of the nonparty that is possible, together with a brief statement of the basis for believing the nonparty is at fault.

  (c) The notice must be filed within 91 days after the party files its first responsive pleading. On motion, the court shall allow a later filing of the notice on a showing that the facts on which the notice is based were not and could not with reasonable diligence have been known to the moving party earlier, provided that the late filing of the notice does not result in unfair prejudice to the opposing party.

(4) *Amendment Adding Party.* A party served with a notice under this subrule may file an amended pleading stating a claim or claims against the nonparty within 91 days of service of the first notice identifying that nonparty. The court may permit later amendment as provided in MCR 2.118.

StoneMor argues that Defendant Bush's Notice of Non-Party Fault, filed on January 3, 2014, was untimely filed where MICH. CT. R. 2.112(K)(3)(c) requires any such notice to be filed within 91 days of the "first responsive pleading" (Dkt 228 at 7-8). StoneMor argues that any notice should have been filed within 91 days of Defendant Bush's Answer to Receiver Gray's July 2, 2008

Verified Complaint (*id.* at 4). Indeed, StoneMor opines that this Court has "no discretion" to excuse Defendant Bush's failure to comply with the rule's mandatory notice requirements (*id.* at 9).

According to Defendant Bush, StoneMor's position improperly shifts the burden of uncovering, identifying and allocating responsibility among potentially responsible parties to him (Dkt 233 at 6). Defendant Bush argues that to the extent he was obligated to file a Notice of Non-Party Fault, he filed a timely notice on January 3, 2014—less than 91 days after Defendants had answered Plaintiffs' Second Amended Complaint, which, according to Defendant Bush, replaced, superseded and wiped away the prior versions of the complaint (*id.*). Defendant Bush argues that even assuming he was required to file a Notice of Non-Party Fault within 91 days of answering the original July 2, 2008 complaint for the notice to be considered timely under MICH. CT. R. 2.112(K), the Court should still deny Plaintiffs' Motion to Strike because (a) StoneMor's effort to obtain multiple recoveries for the same alleged injuries could not have been discovered prior to November 2013; and (b) allowing the Notice of Non-Party fault will in no way prejudice StoneMor (*id.*).

Defendant Bush's argument lacks merit.

In general, a federal court sitting in diversity applies state substantive law and federal procedural law. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938); *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 528 (6th Cir. 2002). However, viewing MICH. CT. R. 2.112(K) as a purely procedural matter rather than as an integral part of Michigan's substantive tort law scheme "would promote the very forum shopping and inequitable administration of the laws *Erie* sought to avoid." *Greenwich Ins. Co.*, 351 F. Supp. 2d at 739 (observing that "failure … to include the rule's notice provision as part and parcel of Michigan's substantive tort law would result

in tort litigation differing materially depending on whether a suit was brought in state court or as a diversity action in federal court"). MICH. CT. R. 2.112(K) is a necessary component to enforce the objectives of Michigan's "fair share liability" scheme, a scheme that abolished joint and several liability among tortfeasors in actions involving personal injury, property damage or wrongful death involving the fault of more than one person. *Id.* at 738 (citing MICH. COMP. LAWS §§ 600.2956, 600.2957 and 600.6304).

Specifically, the state court rule provides the mechanism by which a defendant can give "notice of a claim that a nonparty is wholly or partially at fault," and the party served with the notice "may file an amended pleading stating that a claim or claims against the nonparty within 91 days of service of the first notice identifying that nonparty." MICH. CT. R. 2.112(K)(3)(a), (4). The purposes of the court rule are to provide notice that liability will be apportioned, provide notice of nonparties subject to allocated liability, and allow an amendment to add parties, thereby promoting judicial efficiency by having all liability issues decided in a single proceeding. *Greenwich Ins. Co.*, 351 F. Supp. 2d at 739 (quoting *Veltman v. Detroit Edison, Co.*, 683 N.W.2d 707, 713 (Mich. Ct. App. 2004)). Accordingly, "while MICH. CT. R. 2.112(K) is a state (and not federal) court rule, numerous federal courts in Michigan have enforced the rule in diversity cases." *Smith v. Norfolk S. Co.*, No. 14-cv-10426, 2014 WL 2615278, at *2 (E.D. Mich. June 12, 2014) (citing cases therein).

In applying the plain language of MICH. CT. R. 2.112(K)(3)(c) to this case, the Court agrees with StoneMor that the Answer Defendant Bush filed to Receiver Gray's July 2, 2008 Verified Complaint is his "first responsive pleading." Defendant Bush's argument to the contrary, that his Answer to StoneMor's Second Amended Complaint is now the "first responsive pleading," would employ the phrases "first responsive pleading" and "responsive pleading" without distinction.

Defendant Bush's argument is not supported by a careful reading of the state court rules, which employ the phrases "responsive pleading" and "first responsive pleading" in distinct circumstances. *See* MICH. CT. R. 2.110(A) (defining pleading); MICH. CT. R. 2.111(F)(3) (instructing that "[a]ffirmative defenses must be stated in a party's responsive pleading, either as originally filed or as amended in accordance with MCR 2.118"); MICH. CT. R. 2.116(D)(2) (indicating that grounds for summary disposition "must be raised in a party's responsive pleading, unless the grounds are stated in a motion filed under this rule prior to the party's first responsive pleading").

It is a long-established canon of statutory construction—"expressio unius est exclusio alterius"—that the mention of one thing implies the exclusion of another. *First Am. Title Co. v. Devaugh*, 480 F.3d 438, 453 (6th Cir. 2007) (citing *Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 458 (1974)). Michigan courts also follow this canon of construction, indicating that courts cannot assume that the legislature inadvertently omitted from one provision the language that it included in another, and then, on the basis of that assumption, apply what is not there. *Farrington v. Total Petroleum, Inc.*, 501 N.W.2d 76, 80 (Mich. 1993) ("[T]his Court may not do on its own accord what the Legislature has seen fit not to do.").

Hence, in *Danou Technical Park, L.L.C. v. Fifth Third Bank*, 309905, 2014 WL 2881028, at *5 (Mich. Ct. App. June 24, 2014), the Michigan court of appeals held that although the defendant did not raise its res judicata defense in its "first responsive pleading" to the plaintiff's original complaint, the defense was nonetheless timely asserted in its responsive pleading to the plaintiff's amended complaint because there was no requirement in the court rule that these grounds be raised in the party's "first responsive pleading." *See also Robert A. Hansen Family Trust v. FGH Indus., LLC*, 760 N.W.2d 526, 532 (Mich. Ct. App. 2008) (the defendant did not waive the affirmative

13

defense by failing to plead it in his first responsive pleading, where he asserted that defense in his answer to the plaintiff's amended complaint). Here, Defendant Bush's January 3, 2014 Notice of Non-Party Fault was not filed "within 91 days after the party file[d] its first responsive pleading," and is, therefore, untimely under MICH. CT. R. 2.112(K)(3)(c).

Defendant Bush argues that while he was aware that the claims in the Michigan and Indiana proceedings "overlapped," it was not until he received copies on November 1, 2013 of the settlement agreements that StoneMor had entered into in the Indiana litigation that it became clear that Plaintiffs and their predecessor (Receiver Gray) were not allocating their claimed damages among the various defendants and different lawsuits but had recovered more than the trust assets (Dkt 233 at 5). The Court rejects this argument as a proper basis for accepting the untimely Notice of Non-Party Fault.

The time line in the state court rule is stated in mandatory terms and provides an exception only when due diligence has been exercised in identifying that a nonparty is wholly or partially at fault and only where the late notice does not result in unfair prejudice to the opposing party. MICH. CT. R. 2.112(K)(3)(c). The well-trodden paths of this case belie a finding by the Court that the facts on which Defendant Bush's Notice is based were not ascertainable with reasonable diligence, particularly where Defendant Bush concedes knowledge of the overlapping claims. Further, even assuming the facts were not and could not with reasonable diligence have been known to Defendant Bush before November 1, 2013, the Court finds that the very late filing of the Notice in this case results in unfair prejudice to Plaintiffs, given the fault allocations proscribed in MICH. CT. R. 2.112(K)(2). Therefore, for purposes of justice, the Court determines that Plaintiffs' Motion to Strike (Dkt 227) is properly granted.

### B. Defendant's Motion for Partial Summary Judgment

1. *Motion Standard*

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008); *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005).

The party moving for summary judgment has the initial burden of showing that no genuine issue of material fact exists. *Celotex, supra*; *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). Once the moving party has made such a showing, the burden is on the nonmoving party to demonstrate the existence of an issue to be litigated at trial. *Slusher,* 540 F.3d at 453. The ultimate inquiry is "whether the state of the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

2. *Discussion*

In support of his motion for partial summary judgment, Defendant Bush argues that StoneMor cannot prove the damages element of its claims and that this Court should therefore grant Defendant Bush summary judgment on "Plaintiffs' claims insofar as they seek recovery of trust

assets" (Dkt 236 at 2; Dkt 237 at 15-16). Defendant Bush argues that "it is clear that Plaintiffs, in the Indiana Litigation and in this lawsuit, have sought to recover for the same categories of alleged loss purportedly attributable to the same alleged misappropriation of trust assets" (Dkt 237 at 7). Defendant Bush argues that "well-settled Michigan law, however, clearly precludes multiple recoveries for the same injury" (*id.* at 8, 14). Defendant Bush asserts that through his Motion for Partial Summary Judgment (and his opposition to Plaintiffs' Motion to Strike the Notice of Non-Party Fault), he is attempting to prevent StoneMor from continuing to pursue a "windfall" to which it is not entitled (Dkt 233 at 5).

In response, StoneMor contends that the facts Defendant Bush represents as "undisputed" are "most definitely disputed" (Dkt 242 at 6). According to StoneMor, the amount sought in the Indiana litigation already took into account funds recovered by the Indiana receiver and repatriated funds (*id.*). StoneMor also points out that Defendant Bush overlooks that portions of the settlement were used to satisfy other costs, expenses and contingent liabilities surrounding the Indiana litigation and overlooks that damages have only continued to increase (*id.* at 7, 23-24). StoneMor concludes that the premise for Defendant's summary judgment motion—"no damages"— is flawed and represents "a last-ditch attempt . . . to escape liability" (*id.*).

Defendant Bush is not entitled to judgment as a matter of law.

According to the Michigan Supreme Court, "[t]he general rule, expressed in terms of damages, and long followed in this State, is that in a tort action, the tortfeasor is liable for all injuries resulting directly from his wrongful act, whether foreseeable or not, provided the damages are the legal and natural consequences of the wrongful act, and are such as, according to common

experience and the usual course of events, might reasonably have been anticipated." *Sutter v. Biggs*, 139 N.W.2d 684, 686 (Mich. 1966).

Here, having reviewed the sealed affidavits and exhibits submitted and drawn all reasonable inferences in favor of StoneMor, the Court determines that StoneMor has demonstrated the existence of issues to be litigated at trial about damages. Specifically, StoneMor's expert attests that after accounting for the monies from the settlements, and after giving credit to the Indiana trusts for estimated earning on repatriated funds, the Indiana trusts are still missing funds. Moreover, after accounting for lost income and even after accounting for the settlements, he further concludes that the Indiana trusts still have damages.

In reply, Defendant Bush argues that deducting expenses purportedly attributable to attorneys' fees, litigation costs and a payment to resolve claims brought by the Meyers in the Indiana litigation from the settlement payments *before* reducing StoneMor's claimed damages in this litigation would allow StoneMor to improperly shift the burden of these expenses to Defendant (Dkt 247 at 5-6). However, Defendant Bush's Reply does not dispel the existence of disputed issues about the extent to which StoneMor's damages are the legal and natural consequences of the wrongful acts alleged in this case and damages that might reasonably have been anticipated. Indeed, Defendant Bush expressly reserves the right to challenge StoneMor's calculation and the calculations of StoneMor's expert (Dkt 247 at 4, n.2).

In sum, the Court determines that there are questions of fact regarding the extent of StoneMor's damages in this case, questions that preclude entry of judgment as a matter of law in Defendant Bush's favor. "[Q]uestions of what damages might be reasonably anticipated is a question better left to the fact finder." *Wendt v. Auto Owners Ins. Co.*, 401 N.W.2d 375, 378 (Mich.

17

Ct. App. 1986). *See, e.g., Ensink v. Mecosta Cnty. Gen. Hosp.*, 687 N.W.2d 143, 149 (Mich. Ct. App. 2004) ("[T]he trial court erred by granting summary disposition on this issue because plaintiff presented sufficient evidence to establish a jury-submissible issue regarding damages."); *see also Matthews v. Storgion*, 174 F. App'x 980, 988 (6th Cir. 2006) (where "the district court found a genuine issue of material fact as to damages, …[n]othing demonstrates that the district court abused its discretion in finding an issue of fact"); *Sandesh Ltd. v. Rotate Black, Inc.*, 1:10-CV-1039, 2011 WL 5276561, at *4 (W.D. Mich. Nov. 2, 2011) ("Defendants have raised questions of fact which preclude the actual calculation of damages at the summary judgment stage."). The Court determines that Defendant Bush's Motion for Partial Summary Judgment (Dkt 236) is therefore properly denied.

### III.  CONCLUSION

For the foregoing reasons, this Court grants Plaintiffs' Motion to Strike Defendant's Notice of Non-Party Fault (Dkt 227) and denies Defendant's Motion for Partial Summary Judgment (Dkt 236).  An Order will be entered consistent with this Opinion.

DATED: September 5 , 2014

/s/ Janet T. Neff
JANET T. NEFF
United States District Judge