UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


STONEMOR OPERATING, LLC, et al.,

                Plaintiffs,                                Hon. Ellen S. Carmody

v.                                                    Case No. 1:08-cv-631

CRAIG BUSH, et al.,

                Defendants.

_____/

## OPINION

        This matter is before the Court on Plaintiffs' Motion for Partial Summary Judgment. (Dkt. #280). On November 12, 2014, the parties consented to proceed in this Court for all further proceedings, including trial and an order of final judgment. 28 U.S.C. § 636(c)(1). By Order of Reference, the Honorable Janet T. Neff referred this case to the undersigned. (Dkt. #273). For the reasons discussed herein, Plaintiff's motion is **denied without prejudice**.


## BACKGROUND

        The background and relevant allegations have been articulated in previous opinions and need not be exhaustively detailed here. The present matter is one of several cases initiated in Michigan and Indiana concerning allegations of misuse of cemetery trust funds.

        The transaction that forms the basis for Plaintiffs' conversion claims is the 2004 loan from Defendant Bush to Robert Nelms. In 2004, Defendant Bush, a Michigan attorney, maintained a personal investment account with Smith Barney. Mark Singer served as Defendant Bush's investment manager at Smith Barney. Defendant Bush asserts that Singer contacted him in

November 2004 regarding "a short-term investment opportunity." According to Bush, Singer told him that Nelms, an Indiana investor, was seeking a 30-day "bridge loan" in order to fund the purchase of certain cemeteries and funeral homes in Michigan and Indiana. As required by law, the property owners had maintained the required trust and escrow accounts. Singer allegedly informed Bush that the requested loan amount, $13.5 million, was for approximately one-half of the $27 million purchase price of the cemeteries and funeral homes.

According to Defendant Bush, Concordia Management Services, LLC (Concordia), of which Defendant Bush was the president and sole member, tendered a loan on December 21, 2004 in exchange for a secured promissory note for repayment of the loan. The promissory note, which references a $15 million loan, was purportedly entered into between Concordia (the lender) and Nelms; Ansure Mortuaries of Indiana, LLC (Ansure); Memory Gardens Management Corp. (MGMC); Forest Lawn Funeral Home Properties, LLC; and 3733 North Meridian Street, LLC; jointly and severally (the debtors). Nelms was the sole shareholder and owner of Ansure. Plaintiffs allege that Nelms directed Title Services, LLC to disburse $13.5 million to the sellers for the purchase of properties. On or about that same day, December 21, 2004, the sellers and Nelms/Ansure closed on the sale. Immediately following the purchase, Nelms replaced the current trustee (Forethought Federal Savings Bank) with an Indiana bank (Community Trust and Investment, Inc.). Through a "Successor Trustee/Escrow Agent Agreement," Forethought was directed to liquidate the majority of the cemetery and funeral trust holdings—$23,310,258.78—and transfer them to Community Trust.

Defendant Bush asserts that on December 29, 2004, just eight days after the loan was tendered, Singer contacted him and told him that the "loan" had been repaid in full, with interest.

Plaintiffs allege that Nelms directed a wire transfer of $13,758,253.58—the loan amount plus interest of $246,663.45—from the new account at Community Trust to Defendant Bush's Smith Barney account.  Bush asserts that it was not until early 2008 that it was first brought to his attention that Nelms allegedly repaid Bush's loan with trust funds.  According to Defendant Bush, he relied on Singer's representations that Citigroup would ultimately fund the transaction and that the loan was secured by the assets of the cemeteries.

Plaintiffs allege that Bush's receipt of trust funds, as repayment of the "bridge loan," constituted unlawful conversion.[1]  In his answer to Plaintiff's Second Amended Complaint, Defendant Bush asserted the affirmative defense that "Plaintiff's claims are barred in whole or part by the governing period of limitations and/or the equitable doctrine of laches."  (Dkt. #202 at Page ID# 3544).  Plaintiffs now move for partial summary judgment as to Defendant's statute of limitations defense.  Plaintiffs' motion is specifically limited, however, to "Bush's statute of limitations defense to StoneMor's conversion claims."  (Dkt. #281 at Page ID# 4750).

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case."  *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see*

---

[1] Plaintiffs have asserted against Defendant Bush numerous causes of action.  Despite the voluminous pleadings and competing allegations and evidence, it appears to the Court that the claims against Bush largely concern one central question, simply stated, what did Bush know and when did he know it.

*also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery."  *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial."  *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324).  While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Amini*, 440 F.3d at 357.  The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient.  *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252).  The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial."  *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations."  *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004).  Rather, the non-moving party "must be able to point to some facts which may or will entitle him to

judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54.  In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof  faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).  The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.**          **The Michigan Borrowing Statute**

Under Michigan law, "[a]n action based upon a cause of action accruing without this state shall not be commenced after the expiration of the statute of limitations of either this state or the place without this state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of this state the statute of limitations of this state shall apply." Mich. Comp. Laws § 600.5861. This provision is generally referred to as Michigan's "borrowing statute." *See, e.g., CMACO Automotive Systems, Inc. v. Wanxiang America Corp.*, 589 F.3d 235, 240 (6th Cir. 2009).

At the outset, the Court must resolve a fundamental disagreement between the parties as to the interpretation and application of Michigan's borrowing statute. Plaintiffs argue that when applying Michigan's borrowing statute, the Court must first identify the state in which the cause of action arose and then apply that state's law, and only that state's law, to resolve the statute of limitations question. Thus, Plaintiffs argue that because their conversion claims arose in Indiana, Plaintiff's statute of limitations defense must analyzed by reference to Indiana law and only Indiana law. This interpretation is contradicted, however, by the express statutory language and relevant Michigan authority.

The provision in question, while generally referred to as a borrowing statute, is actually entitled, "Actions accruing outside [the] state." Mich. Comp. Laws § 600.5861. The statute by its very terms applies only to "[a]n action based upon a cause of action accruing without this state. . .." *Id.*; *see also*, *Scherer v. Hellstrom*, 716 N.W.2d 307, 311 (Mich. Ct. App. 2006) (the borrowing statute has no application where the claim in question arose in Michigan). In the context

of an action arising outside of Michigan, the Michigan borrowing statute provides that the claim in question must be dismissed if untimely under "the statute of limitations of *either* this state or the place without this state where the cause of action accrued. . .." *Id.* (emphasis added).

Plaintiffs assert that their conversion claims arose in Indiana, an assertion which Defendant does not challenge. Thus, Plaintiffs' conversion claims are subject to dismissal if untimely filed under *either* Michigan or Indiana law. This interpretation is further supported by the observation that one of the primary purposes of a borrowing statute is to prevent forum shopping intended to avoid a dismissal on statute of limitations grounds. *See, e.g., CMACO Automotive Systems*, 589 F.3d at 242; *Scherer*, 716 N.W.2d at 310; *Arnold v. Owens-Corning Fiberglass Corp.*, 1996 WL 33357580 at *2 (Mich. Ct. App., Nov. 8, 1996).

Plaintiffs are correct that determination of the state in which their conversion claims arose is relevant, but only to determine whether to apply the Michigan borrowing statute. Because Plaintiffs' conversion claims arose in Indiana, the Michigan borrowing statute applies and Plaintiffs' claims must be dismissed if untimely under either Michigan or Indiana law. An examination of both states' laws compel the same conclusion, namely that Plaintiffs' motion must be denied without prejudice because there exist genuine factual disputes that preclude summary judgment.

**II.**        **Michigan Law**

Plaintiffs have asserted both a common law conversion claim and a statutory

conversion claim.[2]   Under Michigan law, common law conversion claims accrue when "the

defendant wrongfully exercises dominion or control over the property, not when a plaintiff demands

its return." *Bain v. Baker's Choice Co.*, 2001 WL 826104 at \*8 (Mich. Ct. App., July 20, 2001).

Such claims are subject to a three year statute of limitations.  *See* Mich. Comp. Laws §

600.5805(10); *Tillman v. Great Lakes Truck Center, Inc.*, 742 N.W.2d 622, 623-24 (Mich. Ct. App.

2007); *Brilinski v. Merit Energy Co., LLC*, 2015 WL 418091 at \*3 (E.D. Mich., Jan. 30, 2015).  The

Court has not located any Michigan authority indicating or suggesting that, with respect to a

statutory conversion claim, the accrual date or statute of limitations is determined or calculated

differently.

Plaintiffs' conversion claims accrued on December 29, 2004, the date on which

Defendant Bush received from Nelms monies taken from the aforementioned trust funds.

Accordingly, unless the statute of limitations was tolled, Plaintiffs' claims, asserted more than three

and one-half years later, are untimely and must be dismissed.  Under Michigan law there exists only

one theory on which Plaintiffs can rely to save these claims from dismissal on limitations grounds.

In *Trentadue v. Gorton*, 738 N.W.2d 664 (Mich. 2007), a wrongful death action, the

Michigan Supreme Court addressed the question whether "the common-law 'discovery rule,' which

allows tolling of the statutory period of limitations when a plaintiff could not have reasonably

discovered the elements of a cause of action within the limitations period, can operate to toll the

---

[2]   The Michigan Supreme Court recently held that statutory conversion under Michigan law, *see* Mich. Comp. Laws § 600.2919a, "is not coextensive with common-law conversion." *Aroma Wines & Equipment, Inc. v. Columbian Distribution Services, Inc.*, - - - N.W.2d - - -, 2015 WL 3772434 (Mich., June 17, 2015) (recognizing that statutory conversion, unlike common law conversion, requires that "a defendant converted property to his, her, ot its 'own use'").

period of limitations, or whether MCL 600.5827, which has no such provision, alone governs the

time of accrual of the plaintiff's claims." *Id.* at 666-67.  The Michigan Supreme Court held that "the

statutory scheme is exclusive and thus precludes this common-law practice of tolling accrual based

on discovery in cases where none of the statutory tolling provisions apply." *Id.* at 670.  As the court

further stated:

> Since the Legislature has exercised its power to establish tolling
> based on discovery under particular circumstances, but has not
> provided for a general discovery rule that tolls or delays the time of
> accrual if a plaintiff fails to discover the elements of a cause of action
> during the limitations period, no such tolling is allowed.  Therefore,
> we conclude that courts may not employ an extrastatutory discovery
> rule to toll accrual in avoidance of the plain [statutory] language. . ..
> Because the statutory scheme here is comprehensive, the Legislature
> has undertaken the necessary task of balancing plaintiffs' and
> defendants' interests and has allowed for tolling only where it sees
> fit.  This is a power the Legislature has because such a statute of
> limitations bears a reasonable relationship to the permissible
> legislative objective of protecting defendants from stale or fraudulent
> claims.  Accordingly, the lower courts erred when they applied an
> extrastatutory discovery rule to allow plaintiff to bring her claims 16
> years after the death of her decedent.

*Id.* at 672 (internal citations and footnotes omitted).

The *Trentadue* case involved a wrongful death action, but the holding therein, that

Michigan courts cannot toll a statute of limitations based on a common law or "extrastatutory" basis,

has been subsequently recognized and applied to other causes of action.  *See, e.g., McCormick v.

Richard*, 2014 WL 4628847 at *2 (Mich. Ct. App., Sept. 16, 2014) (defamation action); *Brooks v.

Willow Tree Village*, 2011 WL 711136 at *3 (Mich. Ct. App., Mar. 1, 2011) (negligence action); *see

also*, *Currithers v. FedEx Ground Package System, Inc.*, 2012 WL 458466 at *4 (E.D. Mich., Feb.

13, 2012) (recognizing that *Trentadue* precludes application of any common law theory to toll a

statute of limitations); *Adkins v. Morgan Stanley*, 2013 WL 3835198 at *7 (S.D.N.Y., July 25, 2013)

(same).  The Court has not located, and the parties have not identified, any authority calling into question the scope or application of the *Trentadue* decision.

Accordingly, the Court concludes that under Michigan law, the only bases on which Plaintiffs can rely to toll the statute of limitations are those provided for by Michigan statute.  Of these various provisions, the only one which the parties have identified (or which the Court discerns) as potentially applying in the present circumstance is the fraudulent concealment provision which provides as follows:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

Mich. Comp. Laws § 600.5855.

As the Court previously indicated, "[f]raudulent concealment means employment of an artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing a right of action.  The acts relied on must be of an affirmative character and fraudulent."  (Dkt. #139 at Page ID# 2587).  As noted in the parties' various briefs in support of or in opposition to the current dispositive motions, there exist genuine factual disputes on this particular question.  Accordingly, Plaintiffs are not entitled to summary judgment based upon Michigan law.

**III.       Indiana Law**

As noted above, Plaintiffs assert both common law and statutory conversion claims

against Bush.   Because Indiana, unlike Michigan, "is a discovery rule state," common law

conversion claims do not accrue and, therefore, the statute of limitations does not begin to run, until

"the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had

been sustained as the result of the tortious act of another." *Estate of Verdak v. Butler University*,

856 N.E.2d 126, 133 (Ind. Ct. App., Nov. 6, 2006).  Common law conversion claims are subject to

a two year statute of limitations under Indiana law. *See* Ind. Code § 34-11-2-4.[3]

Indiana law also recognizes that a statute of limitations can be tolled based upon

fraudulent concealment.   Specifically, Indiana law provides: "[i]f a person liable to an action

conceals the fact from the knowledge of the person entitled to bring the action, the action may be

brought at any time within the period of limitation after the discovery of the cause of action."  Ind.

Code § 34-11-5-1.  In this context, Indiana law "narrowly defines concealment, and generally the

concealment must be active and intentional. . .[and] must be calculated to mislead and hinder a

plaintiff from obtaining information by the use of ordinary diligence, or to prevent inquiry or elude

investigation." *Johnson v. Blackwell*, 885 N.E.2d 25, 32 (Ind. Ct. App. 2008).

Plaintiffs argue that they are entitled to relief by application of the adverse

domination doctrine.[4]  This doctrine has been interpreted and applied in many different ways by

---

[3] The Court fails to discern the basis for Plaintiffs' statutory conversion claim under Indiana law.  In their Second Amended
Complaint, Plaintiffs cite to Ind. Code 34-24-3-1 in support of their statutory conversion claim.  (Dkt. #194 at ¶¶ 124-31).  However, this provision, by
its very terms, applies only to certain specified violations of Indiana statutory law none of which concern civil conversion.  One of the cited provisions
concerns the trade regulation of motor fuel whereas the other cited provisions concern Indiana criminal law.

[4] Plaintiffs' related argument that this Court is bound by the decision of an Indiana trial allegedly concerning this same general
issue is unpersuasive.  Bush was not a party to the action in question and, therefore, had no opportunity to participate in the resolution of the issue in
question. *See, e.g., MicroVote General Corp. v. Indiana Election Com'n*, 924 N.E.2d 184, 191-99 (Ind. Ct. App. 2010).

many different courts throughout the country.  Under Indiana law, the adverse domination doctrine

has been described as follows:

> That doctrine is "[t]he equitable principle that the statute of
> limitations on a breach-of-fiduciary-duty claim *against officers and*
> *directors* is tolled as long as a corporate plaintiff is controlled by the
> alleged wrongdoers."  The adverse domination doctrine is based on
> the premise that a corporation may be so controlled by directors or
> officers engaged in wrongdoing that discovery of the misconduct is
> impossible.  Therefore, the period for discovery of losses should be
> equitably tolled until the wrongdoers no longer control the entity.
> The adverse domination doctrine "operates either to delay the accrual
> of a cause of action or to toll limitations in situations involving
> claims by a corporation against its officers and directors for injuries
> to the corporation."

*City of East Chicago v. East Chicago Second Century, Inc.*, 878 N.E.2d 358, 381 (Ind. Ct. App.

2007) (overruled on other grounds by *City of East Chicago v. East Chicago Second Century, Inc.*,

908 N.E.2d 611 (Ind. 2009)) (internal citations and footnotes omitted).

The Court is not persuaded that the adverse domination has any applicability in this

matter.  As the *City of East Chicago* court expressly stated, "[i]t is not clear the adverse domination

doctrine applies in Indiana."  *City of East Chicago*, 878 N.E.2d at 381 n.22.  The *City of East*

*Chicago* court indicated that even if the adverse domination doctrine did apply in Indiana, it only

applied "in situations involving claims by a corporation against its officers and directors for injuries

to the corporation." *Id.* at 381.  The present action does not fit within this definition.  Furthermore,

as one court recognized, "[a]pplied to corporate entities. . .Indiana's discovery rule is no different

than adverse domination doctrine." *Resolution Trust Corp. v. O'Bear, Overholser, Smith & Huffer*,

840 F.Supp. 1270, 1284 (N.D. Ind. 1993).  In the absence of persuasive or controlling Indiana

authority indicating that the adverse domination doctrine is recognized under Indiana law, and given

the explicit recognition under Indiana law of a theory that serves the same general purpose,[5] the

Court declines to apply the adverse domination doctrine in this matter.[6]

There exist fact questions which preclude a definitive determination when, under

Indiana's discovery rule, Plaintiffs' conversion claims accrued under Indiana law.  Likewise, factual

disputes preclude a determination that Defendant Bush engaged in fraudulent concealment sufficient

to toll the statute of limitations.

### CONCLUSION

For the reasons articulated herein, the Court finds that Plaintiffs have failed to

demonstrate the absence of genuine factual disputes as to Defendant Bush's statute of limitations

defense.  Accordingly, Plaintiffs' motion for partial summary judgment is denied without prejudice.

An Order consistent with this Opinion will enter.


Date:  September 16, 2015                                  /s/ Ellen S. Carmody
                                                         ELLEN S. CARMODY
                                                         United States Magistrate Judge

---

[5] The fraudulent concealment doctrine, identified above, would likewise appear to serve the same general purpose as the adverse domination doctrine.

[6] Moreover, even if the Court were to conclude that the adverse domination doctrine (1) is recognized under Indiana law and (2) applies to the claims asserted against Defendant Bush, Plaintiffs would be entitled to the relief sought only upon a showing that Bush participated in the corporate wrongdoing.  *See, e.g., Buchwald v. Citibank, N.A.*, 2013 WL 5218579 at *5 (D.D.C., Sept. 17, 2013).  As previously discussed, however, this is a matter regarding which there exists a genuine factual dispute.