UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STONEMOR OPERATING, LLC, et al.,

    Plaintiffs,                              Hon. Ellen S. Carmody

v.                                                 Case No. 1:08-cv-631

CRAIG BUSH, et al.,

    Defendants.
_____/

## OPINION

This matter is before the Court on <u>Plaintiffs' Motion for Summary Judgment on Defendant's Setoff Defense</u>. (Dkt. #319). On November 12, 2014, the parties consented to proceed in this Court for all further proceedings, including trial and an order of final judgment. 28 U.S.C. § 636(c)(1). By Order of Reference, the Honorable Janet T. Neff referred this case to the undersigned. (Dkt. #273). For the reasons discussed herein, Plaintiffs' motion is **granted in part and denied in part**.

## BACKGROUND

The background and relevant allegations have been articulated in previous opinions and need not be exhaustively detailed here. The present matter is one of several cases initiated in Michigan and Indiana concerning allegations of misuse of cemetery trust funds.

The transaction that forms the basis for Plaintiffs' conversion claims is the 2004 loan from Defendant Bush to Robert Nelms. In 2004, Defendant Bush, a Michigan attorney, maintained a personal investment account with Smith Barney. Mark Singer served as Defendant Bush's

investment manager at Smith Barney. Defendant Bush asserts that Singer contacted him in November 2004 regarding "a short-term investment opportunity." According to Bush, Singer told him that Nelms, an Indiana investor, was seeking a 30-day "bridge loan" in order to fund the purchase of certain cemeteries and funeral homes in Michigan and Indiana. As required by law, the property owners had maintained trust accounts, including perpetual care trust accounts for the cemeteries, merchandise and services cemetery trusts, and escrow accounts for pre-need planning provided through the cemeteries and funeral homes. Singer allegedly informed Bush that the requested loan amount, $13.5 million, was for approximately one-half of the $27 million purchase price of the cemeteries and funeral homes.

    According to Defendant Bush, Concordia Management Services, LLC (Concordia), of which Defendant Bush was the president and sole member, tendered a loan on December 21, 2004 in exchange for a secured promissory note for repayment of the loan. The promissory note, which references a $15 million loan, was purportedly entered into between Concordia (the lender) and Nelms; Ansure Mortuaries of Indiana, LLC (Ansure); Memory Gardens Management Corp. (MGMC); Forest Lawn Funeral Home Properties, LLC; and 3733 North Meridian Street, LLC; jointly and severally (the debtors). Nelms was the sole shareholder and owner of Ansure. Plaintiffs allege that Nelms directed Title Services, LLC to disburse $13.5 million to the sellers for the purchase of properties. On or about that same day, December 21, 2004, the sellers and Nelms/Ansure closed on the sale. Immediately following the purchase, Nelms replaced the current trustee (Forethought Federal Savings Bank) with an Indiana bank (Community Trust and Investment, Inc.). Through a "Successor Trustee/Escrow Agent Agreement," Forethought was

directed to liquidate the majority of the cemetery and funeral trust holdings—$23,310,258.78—and transfer them to Community Trust.

Defendant Bush asserts that on December 29, 2004, just eight days after the loan was tendered, Singer contacted him and told him that the "loan" had been repaid in full, with interest. Plaintiffs allege that Nelms directed a wire transfer of $13,758,253.58—the loan amount plus interest of $246,663.45—from the new account at Community Trust to Defendant Bush's Smith Barney account. Bush asserts that it was not until early 2008 that it was first brought to his attention that Nelms allegedly repaid Bush's loan with trust funds. According to Defendant Bush, he relied on Singer's representations that Citigroup would ultimately fund the transaction and that the loan was secured by the assets of the cemeteries.

In their Second Amended Complaint, Plaintiffs assert numerous causes of action. (Dkt. #194). In his answer to Plaintiffs' Second Amended Complaint, Defendant Bush asserted several affirmative defenses, including the following: "Defendant is entitled to a setoff of Plaintiffs' claims to the extent that Plaintiffs and/or their predecessors in interest have recovered allegedly misappropriated trust funds from any responsible third-parties, whether through litigation, judgment, negotiation, voluntary payment, settlement or otherwise." (Dkt. #202 at Page ID# 3545). Plaintiffs now move for summary judgment as to this defense.

**SUMMARY JUDGMENT STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that

the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324).  While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357.  The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252).  The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility

determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the

party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

In the context of the present motion, the parties are referencing distinct, but not necessarily incompatible, legal concepts. Plaintiffs argue that Defendant Bush is not entitled to a "setoff" of amounts procured by Plaintiffs in other actions from other actors. Defendant Bush, on the other hand, argues that Plaintiffs are not entitled to "double recovery." Both parties are correct.

Prior to 1995, Michigan recognized the common-law rule "that where a negligence action is brought against joint tortfeasors, and one alleged tortfeasor agrees to settle his potential liability by paying a lump sum in exchange for a release, and a judgment is subsequently entered against the non-settling tortfeasor, the judgment is reduced *pro tanto* by the settlement amount." *Markley v. Oak Health Care Investors of Coldwater, Inc.*, 660 N.W.2d 344, 346 (Mich. Ct. App. 2003). This is referred to as the "common-law rule of setoff." *Id.* Prior to 1995, Michigan operated under a joint and several liability scheme under which a tortfeasor could be held liable for the entire judgment against a plaintiff regardless of his share or extent of fault. *Id.* at 347. In 1995, Michigan enacted tort reform legislation which "generally abolished joint and several liability and replaced it with 'fair share liability' [several liability] where each tortfeasor only pays the portion of the total damages award that reflects that tortfeasor's percentage of fault." *Bell v. Ren-Pharm, Inc.*, 713 N.W.2d 285, 287 (Mich. Ct. App. 2006).[1]

---

[1] Michigan retained joint and several liability with respect to certain statutorily defined causes of action, none of which are implicated in the present action. *See* Mich. Comp. Laws § 600.6304.

The common law of setoff developed as part of joint and several liability. As the Michigan Supreme Court recently observed:

> Because in some instances a jointly and severally liable tortfeasor settles before trial, the common-law setoff rule is necessary to ensure that the plaintiff does not recover more than a single recovery for the single injury. The common-law setoff rule entitles the remaining tortfeasors, who are still liable for the *entire* injury, to set off the amount of the cotortfeasor's settlement from any verdict rendered against them.

*Velez v. Tuma*, 821 N.W.2d 432, 438 (Mich. 2012).

Setoff has no applicability in the context of several liability, however, "[b]ecause a system of several liability already incorporates the fault of *all* tortfeasors in establishing every individual tortfeasor's proportion of fault, there is no danger that the plaintiff will be overcompensated for the injury by the failure to set off the amount of another tortfeasor's settlement." *Id.* at 437-38. Thus, as Plaintiffs assert, Defendant Bush cannot avail himself of the common law of setoff in this matter. However, Plaintiffs have failed to identify any authority holding (or even suggesting) that by enacting tort reform, and diminishing the applicability of the common law setoff rule, Michigan intended to eliminate the general prohibition against double recovery.

Under Michigan law, "only one recovery is allowed for an injury." *Grace v. Grace*, 655 N.W.2d 595, 602-03 (Mich. Ct. App. 2002). To assess whether an improper "double recovery" has occurred, the Court must "ascertain what injury is sought to be compensated." *Id.* at 602. Where a plaintiff obtains a recovery "for any injury identical with another in nature, time, and place, that recovery must be deducted from the plaintiff's other award." *Id.*; *see also*, *Laethem Equipment Co. v. Deere & Co.*, 485 Fed. Appx. 39, 51 (6th Cir., June 13, 2012) (applying Michigan law).

In finding this general principle applicable in this matter, the Court finds instructive the circumstance presented in the *Grace* case. In *Grace*, a wife sought damages against her husband for failing to disclose certain marital assets and for failing to accurately identify the value of other disclosed assets. *Grace*, 655 N.W.2d at 602. The wife, however, had also previously pursued a separate action against her divorce attorney seeking damages for his alleged failure to discover the assets her husband had concealed and for his failure to determine the true worth of the assets her husband disclosed. *Id.* Finding that through these two actions the wife "sought to recover damages for an injury identical in nature, time, and place against both [her husband] and her divorce attorney," the court affirmed the trial court's decision to "set off the amount of the settlement that [the wife] had obtained in her legal malpractice action against her divorce attorney." *Id.* at 602-03.

The Court discerns no relevant distinction between the present circumstance and that facing the *Grace* court. Just as in *Grace*, Defendant Bush alleges that Plaintiffs are attempting to secure from him damages for an injury which are identical in nature, time, and place to the injury claimed in other actions. Assuming Plaintiff can demonstrate that such is the case, Defendants will be precluded from obtaining an improper double recovery.

## CONCLUSION

For the reasons articulated herein, the Court finds that Defendant Bush is not entitled to take advantage of the common law of setoff.  The Court further finds, however, that Defendant is not entitled to obtain a double recovery as discussed above.  Accordingly, Plaintiffs' motion is **granted in part and denied in part**.  An Order consistent with this Opinion will enter.

Date:  September 16, 2015             /s/ Ellen S. Carmody
                                      ELLEN S. CARMODY
                                      United States Magistrate Judge